James F. Lewin (SBN 140268)
Renee M. Parker (SBN 256851)
THE MORTGAGE FIRM, PLC
27455 Tierra Alta Way, Suite B
Temecula, California 92590
Telephone: (619) 465-8200
Facsimile: (951) 225-4073
TMLF File No. 155663

Attorneys for Objecting Secured Creditor, REAL TIME RESOLUTIONS, INC. as agent for THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWHEQ REVOLVING HOME EQUITY LOAN TRUST, SERIES 2007-D

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>OMER KASSA,<br>aka ALEBACHEW KASSA,<br>dba H&O, INC.,<br><br>Debtors. | Case No. 20-51306<br><br>OBJECTION TO DEBTORS' CHAPTER 11 PLAN OF REORGANIZATION DATED DECEMBER 2, 2020<br><br>Hearing:<br>Date:    January 14, 2021<br>Time:   10:00 a.m.<br>Place:  Video Conference |

Secured Creditor, REAL TIME RESOLUTIONS, INC. as agent THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWHEQ REVOLVING HOME EQUITY LOAN TRUST, SERIES 2007-D ("Creditor"), hereby objects to confirmation of the Combined Plan of Reorganization and Disclosure Statement Dated December 2, 2020, filed December 2, 2020 as Docket No. 41 (the "Plan") by Debtor OMER KASSA ("Debtor"). In support of its objection, Creditor alleges as follows:

///

1

OBJECTION TO CHAPTER 11 PLAN

## I. FACTUAL BACKGROUND:

On September 1, 2020, Debtors filed Case No. 20-51306, under Chapter 11 of the Bankruptcy Code, in the Northern District of California.

On or about April 25, 2007 Debtor executed a Home Equity Credit Line Agreement and Disclosure Statement having an initial credit limit of $200,000.00 and payable to Countrywide Home Loans, Inc. (the "Note"). The interest rate is variable, with a maximum rate of 10.500%; on the date of filing the interest rate was 5.500%. A true and correct copy of the Note will be filed with Creditor's proof of claim.

The Note is secured by a perfected Deed of Trust ("Deed of Trust") dated April 25, 2007 for the real property commonly known as and located at 3712 UNDERWOOD DR APT 1, SAN JOSE, CA 95117 (the "Property"), executed by Debtor and Hirut L Kassa ("Kassa" singularly) as husband and wife, and recorded in the Office of the Santa Clara County Recorder on or about May 2, 2007 as Instrument No. 19409016. A true and correct copy of the Deed of Trust will be filed with Creditor's proof of claim

Debtors' Plan states Debtor feels the loans he obtained were predatory (Dkt. 41, Pg. 10) and, as a result, Debtor never made any payments to Creditor after the payment due October 25, 2008.

Debtor states Creditor's lien is wholly secured and that the Property is his primary residence (Dkt. 41, generally). The Plan lists Creditor as a Class 1B Claimant, stating Debtor intends to reorganize by adjusting the loan terms to a new 40-year fixed loan at 2.00% with payments of $1,059.00 per month starting after the effective date of the Plan (Dkt. 41).

Debtor blames others for a loan he actively and specifically obtained, has no reasoning for retaining the cash draws he personally took on this loan, and takes no responsibility for the failure to tender payments to Creditor or its predecessors even before he felt the loan somehow no longer required him to tender any payments (Dkt. 41, Pg. 10.).

## II. LEGAL ARGUMENTS:

The Bankruptcy Code sets forth the requirements for confirmation of a Chapter 11 plan. The Plan here, as proposed, does not meet these requirements and cannot be confirmed.

### A. The Plan Fails to Provide for Appropriate Payment and/or Adequate Protection of the Secured Claim

Creditor's lien is, by Debtors' own admission, wholly secured. 11 U.S.C. § 1129(b)(2)(A) requires, among other things, that the holders of secured claims to retain their lien and receive payments of at least the value of their claims.

Here, the Plan impermissibly modifies the Note by changing the type of agreement from an adjustable-rate loan with a maximum of 10.500% to a fixed-rate of merely 2.00%; Debtor not only sets an interest rate that is not only well below the amount Debtor agreed to pay in the Note, but one that is also well below the market rate for a similar loan.

The Plan also impermissibly extends the loan term beyond the repayment terms to which Debtor agreed. The original loan term was a repayment period of 180 months after the draw period ended; the draw period would likely be 60 months since Debtor's severe default when the draw period ended would not allow for renewal of another 60 month period at the end of the first 60-month term. Debtor proposes a FOURTY year payment period on a Note with approximately 7 years remaining on a 20 year loan term (2007, plus 60 months, plus 180 months = maturity date in 2027).

Debtor also proposes onerous default terms in the Plan. Specifically, "Material Default" is defined as missing a payment after the tenth day it was due, which is fair enough. However, Debtor then states he is entitled to at least 30 days to cure the default without limitation on how many defaults he can incur (Dkt. 41, Part 6(c)). Under these terms Debtor could technically default every month and then require written notices from creditors, which incurs legal fees, for each of these defaults. Debtor also requires a creditor to reopen the instant bankruptcy if it is closed, file a motion to dismiss or convert the instant bankruptcy to Chapter 7, or seek stay relief (Dkt. 41, Part 6(d)). This is prior to creditors having any ability to then proceed with the required foreclosure steps.

Creditor does not agree to these terms. "A review of the legislative history leads us to conclude that a debtor, in structuring a proposal of adequate protection for a secured creditor, 'should as nearly as possible under the circumstances of the case provide the creditor with the value of his bargained for rights.' *American Mariner,* 734 F.2d 426 at 435 (9th Cir. 1984). … whether adequate protection exists in a given case depends upon the nature of the collateral and the nature of

the debtor's proposed use of that collateral." *In re Bear River Orchards*, 56 B.R. 976, 979 (Bankr. E.D. Cal. 1986). "In order to encourage reorganization, the courts must be flexible in applying the adequate protection standard. This flexibility, however, must not operate to the detriment of the secured creditor's interest." *Id*. at 978.

### B. The Plan is Not Feasible

11 U.S.C. § 1129(a)(1) provides that a court shall confirm a plan only if it complies with the applicable provisions of the bankruptcy code. "[W]here a plan is on its face nonconfirmable, as a matter of law, it is appropriate for the court to deny approval of the disclosure statement describing the nonconfirmable plan." *In re Silberkraus*, 253 B.R. 890, 899 (Bankr.C.D.Cal.2000); see also 7 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 1125.03[4] at 1125–23 (16th ed. 2011) ("most courts will not approve a disclosure statement if the underlying plan is clearly unconfirmable on its face") (citations omitted).  One court described this obligation in strong terms: "If, on the face of the plan, the plan could not be confirmed, then the Court will not subject the estate to the expense of soliciting votes and seeking confirmation." *In re Pecht*, 57 B.R. 137, 139 (Bankr.E.D.Va.1986). "Not only would allowing a nonconfirmable plan to accompany a disclosure statement, and be summarized therein, constitute inadequate information, it would be misleading and it would be a needless expense to the estate." *Id*.

Pursuant to 11 U.S.C. §1129(a)(11), the Court is required to find that "confirmation is not likely to be followed by the liquidation or the need for further financial reorganization of the debtor...." *In re Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1382 (9th Cir. 1985). Under the Second Circuit decision of *Chase Manhattan Mortgage and Realty Trust v. Bergman* (*In re Bergman*), 585 F.2d, 1171, 1179 (2nd Cir. 1978), the Court stated:

> Under the test of feasibility, the court "used the probability of actual performance of the provisions of the plan. Sincerity, honest, and willingness are not sufficient to make a plan feasible, and neither are visionary promises. The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts."

The Ninth Circuit is consistent in determining whether a Plan meets the requirements of Section 1129(a)(11), wherein it stated, "the bankruptcy court has an obligation to scrutinize the plan

4

carefully to determine whether it offers a reasonable prospect of success and is workable." *In re Pizza of Hawaii*, 761 F.2d at 1382. To establish feasibility, the plan proponent must demonstrate concrete evidence of a sufficient cash flow to fund and maintain both its operations and obligations under the Plan. *S &P, Inc. v. Pfeifer*, 189 B.R. 173, 183 (N.D. 1995) (quoting *In re SM 104 Ltd.*, 160 B.R. 202, 234 (Bankr. S.D. Fla. 1993)).

The burden is completely on Debtor to show reorganization is in prospect. 11 U.S.C. § 362(g); *United Savings Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 375-76 (1988). Under the standard set by the Supreme Court in *Timbers*, in order to establish that reorganization is in prospect, Debtor is required to demonstrate a "reasonable possibility of a successful reorganization within a reasonable time." *Id*. At 376. Debtor is required to do more than merely assert he can reorganize if only given the opportunity to meet the *Timbers* standard. *See e.g.*, *Am. State Bank v. Grand Sports, Inc.*, 86 B.R. 971, 975 (Bankr.N.D.Ill 1988).

Here, Debtor fails to establish that he will be able to comply with the Plan. Specifically, Debtors' disposable income is already ***negative*** $342.43 per month (Dkt. 29, Amend. Sched. J), inclusive of the rental income derived from all units of the Property plus his employment income.

Post-petition payments to the lienholder senior to Creditor are $4,279.57. *See*, Claim No. 2-1 on the Claims Register herein (the "Nationstar Claim"); *see also*, Docket No. 41 at Pg. 2. Debtor only provides for $4,758.00 in post-petition mortgage payments in Amended Schedule J (Dkt. 29), which clearly does not incorporate payments to Creditor. This means Debtor has understated his disposable monthly income by $1,575.61 ($4,758.00 - $4,279.57 to senior lienholder - $2,054.04 (variable) to Creditor). The monthly disposable income amount negatively increases to approximately -$1,918.04 (<$342.43 - $1,575.61 = <$1,575.61>).

Even calculating the monthly disposable income using the proposed half-payment to Creditor, Debtor will still fall short every single month by an additional -$580.57 ($4,758.00 - $4,279.57 senior lienholder - $1,059.00 proposed to Creditor = <$580.57>). The negative monthly disposable income amount in this instance is still increased to -$923.00 *even with* the proposed partial payment (<$342.43> - $580.57 - <$580.57>).

5

OBJECTION TO CHAPTER 11 PLAN

## III CONCLUSION

It is respectfully requested that confirmation of the Combined Plan of Reorganization and Disclosure Statement Dated December 2, 2020 proposed by the Debtor be denied. The Plan falls short of the requirements to approve a disclosure statement or confirm a Chapter 11 plan, and based on the documentation before this Court the Plan can never be feasible.

WHEREFORE, Creditor prays as follows:

1. That confirmation of the proposed Plan be denied; and
2. For such other and further relief as this Court deems proper.

Respectfully submitted,

DATED: December 29, 2020     THE MORTGAGE LAW FIRM, PLC

BY: /s/ Renee M. Parker
Renee M. Parker, Esq.,
Attorneys for Secured Creditor,
REAL TIME RESOLUTIONS, INC. as agent for THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWHEQ REVOLVING HOME EQUITY LOAN TRUST, SERIES 2007-D